[Civ. No. 43791. First Dist., Div. Three. Jan. 18, 1979.]

Estate of HAROLD T. HOERTKORN, Deceased.
HAROLD S. DOBBS, Petitioner and Appellant, v.
SECURITY PACIFIC NATIONAL BANK, as Executor, etc.,
Objector and Respondent.

**COUNSEL**

Dobbs & Nielsen, James R. Parrinello and Robert S. Tandler for Petitioner and Appellant.

Schoenfeld & Speckman and Irving Schoenfeld for Objector and Respondent.

## OPINION

**FEINBERG, J.**—The appeal in this matter seeks review of an order denying appellant's application for leave to file a creditor's claim in the subject decedent's estate.[1] In dispute is whether the exception of Probate Code section 720[2] to the time limits of the probate claim procedure is limited to physical injuries.

Appellant's claim states in relevant part as follows: On or about June of 1959, appellant formed the Marin Bowl Corporation with Ferd Masberg. Appellant was a 50 percent shareholder and Masberg was a 25 percent shareholder. The decedent, Harold Hoertkorn, was appellant's personal certified public accountant, and upon appellant's recommendation, was appointed certified public accountant for the Marin Bowl Corporation. Hoertkorn was in a fiduciary capacity in relation to appellant, holding a high position of trust in connection with all appellant's business and personal affairs. In late 1961 or early 1962, Hoertkorn suggested to appellant that he sell his 50 percent interest in Marin Bowl Corporation to Masberg, and in reliance on decedent's judgment and knowledge, appellant agreed to sell his shares for the sum of $35,000. The shares were transferred on or about February 23, 1962. Appellant continued to utilize Hoertkorn as his accountant until Hoertkorn died in October 1976. Time for filing claims against Hoertkorn's estate, pursuant to section 700, expired on April 4, 1977.

During the week of September 19, 1977, appellant was asked by the executor of decedent's estate how he could obtain the transfer of 5 percent of the outstanding shares of the Marin Bowl Corporation to the beneficiary of the estate. This was the first that appellant had known that decedent owned any shares and through inquiry obtained a copy of a letter dated January 2, 1962, from Masberg to decedent agreeing to give decedent the shares when they were purchased from appellant "in consideration of your services on my behalf." On October 26, 1977, appellant spoke with Masberg concerning this matter and learned that

---

[1]It appears that the order appealed from is not appealable since it is not one of the probate orders made appealable in Probate Code section 1240 which is exclusive in probate matters. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 95, p. 4102.) The court's decision below, however, is reviewable by mandate. (*Nathanson* v. *Superior Court* (1974) 12 Cal.3d 355, 361 [115 Cal.Rptr. 783, 525 P.2d 687].) Since the question of the propriety of the court's action has been fully briefed and argued and no protest to the appeal has been made by respondent, we treat the appeal as a petition for writ of mandate. (See *U.S. Financial* v. *Sullivan* (1974) 37 Cal.App.3d 5, 11-12 [112 Cal.Rptr. 18].)

[2]All statutory references will be to the Probate Code unless otherwise indicated.

soon after appellant sold to Masberg the shares for $35,000, Masberg sold half of them for $100,000 and retained the other half in his own name.

On November 25, 1977, appellant moved the probate court for leave to file a creditor's claim against Hoertkorn's estate, alleging, in essence, the facts recited above. The executor of the estate objected on the grounds that appellant's claim did not come within section 720 and therefore was barred by section 700. The court denied appellant's motion and this proceeding then followed.

### ▮ *In the Context of Section 720, Does the Phrase "for Injuries . . . to a Person" Mean Only Physical Injuries?*

Section 720 is an exception to the time limits of the probate claim procedure and provides that claims "for injuries to, or death of, a person" may be filed within one year of accrual of the claimant's cause of action, as contrasted with the usual four-month claim period provided in sections 700 and 707.

Probate Code section 707 requires "all claims arising upon contract . . . and all claims for funeral expenses and all claims for damages for injuries to or death of a person or injury to property and all claims against the executor or administrator of any testator or intestate who in his lifetime has wasted, destroyed . . . or converted to his own use, the property of another person or committed any trespass on the real property of another person" to be filed within the usual time limits for filing creditors' claims. Section 707 excepts from this requirement claims falling within the purview of section 720, which section provides in relevant part as follows: "If a claim for damages for injuries to, or death of, a person, for which no action specified in Section 709 was pending at the time of the decedent's · death, is not filed within the time otherwise limited by this article, the court, upon application of the claimant made not later than one year after accrual of the claimant's cause of action, and upon such notice and hearing, if any, as the court may order, shall permit the filing of the claim and, if required, appoint or reappoint a personal representative."

Appellant's claim is grounded on a fraud theory and thus his cause of action would not accrue until discovery of the facts constituting fraud. (Code Civ. Proc., § 338, subd. 4.)

Concededly, in the case at bench, if section 720 applies, the application for leave to file the claim was timely and should have been granted. It is

equally clear that if section 720 does not apply, the application was untimely and was properly denied.

The naked issue therefore is does the phrase in section 720 "injuries to . . . a person" encompass *only physical* injuries to a person, or does it embrace the concept of a fraud perpetrated upon a person?

California formerly followed the common law rule that actions for personal torts abated on the death of the injured party or the tortfeasor. (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 13, p. 2312; see generally Prosser, Law of Torts (4th ed. 1971) § 126, p. 898.) In 1949, the Legislature, by enactment of Civil Code section 956, provided for survival of actions "arising out of a wrong which results in *physical injury to the person*" (italics added) as well as for wrongful death. Witkin states that this left uncertain whether actions for torts not causing bodily injuries survived and led the Legislature in 1961 to modernize the law and provide in section 573 for the survival of all causes of action. (4 Witkin, *op. cit. supra,* § 14, pp. 2314-2315.)

The claim statutes of the Probate Code kept pace with this broadening of survival statutes. In 1949, section 707 was enacted, requiring filing of claims "for damages for *physical injuries* or death" (italics added) and in 1961 was amended to cover claims "for damages *for injuries to or death of a person*" (italics added). It seems reasonably clear that the Legislature, by deleting the word "physical" as a modifier of "injuries," intended the term "injuries" to be without limitation. Section 720 was not enacted until 1969 when it excepted from the operation of section 707 claims "for injuries to, or death of, a person."

The phrase "injuries to a person" has been construed both as limited to physical injuries (see, e.g., *Graham* v. *Mixon* (1917) 177 Cal. 88, 91 [169 P. 1003]; *Monk* v. *Ehret* (1923) 192 Cal. 186, 189, 192 [219 P. 452]) and as encompassing any injury whether physical, mental, pecuniary, or any change of position for the worse (see, e.g., *Lucas* v. *Lucas Ranching Co.* (1937) 18 Cal.App.2d 453 [64 P.2d 160]; *Turner* v. *Turner* (1959) 167 Cal.App.2d 636, 641-642 [334 P.2d 1011]). In other contexts, fraud has been construed as involving an injury to property. (*Ponsonby* v. *Suburban Fruit Lands Co.* (1930) 210 Cal. 229 [291 P. 167].) None of these cases, however, involved survival statutes.

■ It is the usual rule of statutory construction that words or phrases in a provision that were used in a prior act or closely related act

pertaining to the same subject will be construed to be used in the same sense. (2A Sutherland, Statutory Construction (4th ed.) § 51.02, p. 290.) Following this general rule, since we believe the Legislature, by the 1961 amendment to section 707, intended "injuries to . . . a person" to apply to any variety of injury, the same phrase in section 720 should be construed the same way. Furthermore, when the Legislature in this area of law intended to limit "injuries" to "physical injuries," they did so by using the modifier. Therefore, it follows that had they intended to restrict injuries to the person in section 720 to physical injuries, they would have done so.

There are no cases which have considered the meaning of the words "injuries to . . . a person" in section 720. Respondent draws attention to the discussion of the section in the publication Review of Selected 1969 Code Legislation (Cont.Ed.Bar 1969) page 188 in which the authors assume that the section refers only to "personal injuries" and describe it as providing "limited relief to specified tort claimants." The authors also describe the section as having been passed to remedy the situation illustrated by the case of *Hurlimann* v. *Bank of America* (1956) 141 Cal.App.2d 801 [297 P.2d 682]. There, the plaintiff allegedly injured by negligent medical treatment did not discover the injury until after the death of her physician and the passage of the period to file a claim. The court by reference to the legislative purpose and policy of the claims statute held that the Legislature had intended to bar such a claim despite its late discovery. The case in no way dealt with a distinction between physical injuries and other injuries. That it dealt with a physical injury is due specifically to the nature of the injury suffered by that particular plaintiff and generally to the fact that the case arose between 1949 and 1961 when the survival statutes covered only "physical injuries."

 The claim statutes have as their purpose the speedy distribution of the assets of the estate. (*Nathanson* v. *Superior Court, supra,* 12 Cal.3d 355, 365.) Section 720 provides that property distributed pursuant to court order before notice of the late claim will not be subject to the claim and the personal representative or distributee will not be liable. The Legislature has thus protected the general policy of the claims period and allowed some possibility of relief for the plaintiff who discovers his claim after death of the tortfeasor. No reason appears to limit that relief to only those plaintiffs who suffered physical injuries when a remedial construction consistent with the history of the survival statutes and related claims sections is available. Nor does our holding open wide the possibility of avoidance of the four-month claim period. Most claims against a

decedent's estate will have *accrued before* the death of the decedent, in which event section 720 will not apply, or the claim will be discovered and filed within the four-month claim period. It is only the unusual case, such as here, when the claim will accrue after the lapse of the four-month period.

In light of our ruling above, we do not consider appellant's other arguments raised in this proceeding.

Let a peremptory writ of mandate issue to the San Mateo Superior Court, commanding it to vacate its order denying the application of appellant for leave to file a creditor's claim and to enter its order granting said application.

Scott, Acting P. J., and Halvonik, J., concurred.